McKiNkey, J.,
delivered the opinion of the court.
Erom the proof in this case, it appears that in the year 1846, John Kimbro, the nominal plaintiff, placed a negro girl, owned by him, in the possession of his his step-son, Benjamin Bugg, (defendant’s intestate,) as a loan, to be retained by said Bugg, until Christinas following. The slave continued in the possession of Benjamin Bugg until some time in 184'T, when he and John Bugg, (one of the beneficiaries in the present action,) sold her to one Maddux, for three hundred and twenty-five dollars, and jointly executed a bill of sale. Some time after said sale, Benjamin Bugg died, and after his death, in 1848, said Kimbro and wife, executed a bill of sale for said slave, to John Bugg, Jesse Bugg, and said Benjamin Bugg; the slave then being in the adversa possession of Maddux, Benjamin Bugg being dead. It seems from the proof, that the intention of Kimbro and wife had been, to give said slave jointly to the three Buggs, who were the children of Mrs. Kimbro by a former husband; and the purpose of the bill of sale executed by them, was to enable *192 John and Jesse Bugg, for whose use this suit is brought, to recover from the estate of Benjamin Bugg, (who, as is alleged, received the money from Maddux,) their equal share of the price of said slave. "With a view to effect this purpose, a false date was inserted in the bill ■ of sale, (23rd November, 1846,) a period anterior to the conversion of the slave by Benjamin Bugg, and the bill of sale having been, in fact, executed in 1848, as before stated. On the trial in the circuit court, the plaintiff produced and read to the jury, said bill of sale, executed by himself and wife, with the certificates of pro'*bate, and registration of the same; and the foregoing was all the evidence in the cause.
The defendant, by his counsel, objected to the proof, showing that the bill of sale was antedated: it was admitted, however; but, in the charge to the jury, the court held that it was inadmissible, and that the plaintiff was not permitted to show that his own bill of sale had been antedated. This is the only exception taken to the charge. The verdict was for the defendant, and a new trial being refused, an appeal in error was prosecuted to this court.
It is insisted that the court erred in holding that it was not allowable for the plaintiff, under the circumstances of this case, to show that the bill of sale was, in fact, executed at a period subsequent to that at which it bore date.
The argument assumes, that the slave being in the adverse possession of Maddux, at the time the bill of sale was, in fact, executed by Kimbro, nothing remained in the latter but a bare wight to sue, and recover possession of the slave; and that, as by the maxim of the common law, a chose in action can not be assigned or *193 transferred, so as to give the assignee a right to sue in Ms own name, this action was properly and necessarily brought in the name of Kimbro, who had a right to maintain the same; and that, as the date is no part of a deed, and is not maintained, the plaintiff was not estopped from showing that the bill of sale was executed on a different day from that of its date.
In the view in which this case presents itself to our minds, we are at a loss to perceive the relevancy or .importance of the proof rejected by the court. But were it otherwise, in rejecting it there was no error. The general doctrine insisted upon, in respect to the date of a deed, or other instrument, is unquestionably correct, but it is not applicable to a case like the present. Here, the plaintiffs deliberately and intentionally gave the bill of sale a false date, expressly with a view to the accomplishment of a particular purpose,' and that failing, he must abide the consequence of his own act. However it may be as regards others,' he is estopped to aver or prove a different date from that set forth on the face of the instrument. 1 Greenleaf’s Rep,, 343; 11 Mass. Rep., 282; 4 Phillips on Ev., p. 1448.
But how was the evidence of any importance? The bill of sale was either operative to divest the plaintiff of all interest and right of action, or it was of ho effect whatever. If it was a mere nullity, as the argument assumes, then KimMo’s interest, whatever it was, remained in him, as it wa| before, wholly unaffected by the execution thereof. And'if he w’fére entitled to maintain an action for the value] of the slave, or the money for which she was sold,: there was no necessity for, or propriety in, his introducing the supposed void conveyance; and if it had been offered by the defendant for the purpose of *194 defeating tbe action, tbe plaintiff, (if it was void in law,) might have avoided it upon proof of the facts wbicb rendered it inoperative.
But in tbe present state of tbe law upon tbis subject, in Tennessee, we are not prepared to admit tbe correctness of tbe conclusion, that tbe bill of sale made by Kimbro was inoperative to divest and transfer bis interest in tbe slave, upon tbe ground of Maddux’s adverse possession, at tbe time of its execution. Our statute for tbe suppression of maintenance and cham-perty, and tbe purchase of pretended titles, has no application to slaves, or assignments of personal property; and upon tbe common law principle, that cboses in action are not assignable, we think no such conclusion can be supported.
"We are aware that the authorities are at variance upon tbis point; but we think tbe doctrine, as laid down by Mr. Justice Story, in tbe case of Brig, Sarah Ann, 2 Sumners’ Rep., 211, is more reasonable and correct doctrine. lie said, in that case, that he “knew of no principle of law which establishes that a sale of personal goods is invalid, because they are not in possession of tbe rightful owner,' but are withheld by a wrong-doer. The sale is not, under such circumstances, tbe sale of a right of action, but a sale of tbe thing itself, and good to pass tbe title against every person not holding the same, under a Iona fide title, for a valuable consideration, without notice, and a forüori, against a wrong-doer.” 2 Kent’s Com., 492; Story on Con., §§ 582, 583.
Tbe ancient principle of the common law, that, the assignment of a chose in action was void, as savoring of maintenance and champerty, had its origin in tbe *195 peculiar state of society in. England, at tbe time of its adoption. Tbe mischiefs which it was intended to suppress, great as they may have been there, are of a character from which we have but little to apprehend under our institutions. But even in England, the maxim that a chose in action is,not assignable, has been long, in a great degree, disregarded, as it must be in every commercial country, where the great mass of personal property must necessarily lie in contract. Eor a long period, it has been well established in the jurisprudence of that country, that courts of law will give the same protection to the assignee of a chose in action, which formerly, could only have been given by a court of equity.
Nothing of the ancient doctrine remains, save the mere formal requirements, that the action shall be brought in the name of the assignor; and in the language of Bullen, J., 4 Term. Rep., 341, this is merely a shadow.
A right of action may arise upon the breach of an implied as well as of an express contract; or it may also arise from a wrong or injury; but rights of action growing out of personal wrongs, depend upon their own peculiar principles, and cannot properly be classed under denomination of personal property; and therefore, assignable choses in action mean only such, as can, with propriety, be ranked as personal estate. 2 Bl. Com., 397. In this State, the maxim of the common law is regarded as having been entirely exploded. 1 Meigs’ Dig., p. 85; 1 Yerg. R., 175; 3 Cow. R., 623.
Not only may the assignee of a negotiable paper sue in his own name, but by the act of 1801, ch. 6, § 54, the assignee of “ bonds with collateral conditions, bills, or notes, for specific articles, or the performance *196 of any duty,” may sue in their own names, as well in courts of law as in equity. And the act of 1825, ch. 29, has gone still further. In cases where the equitable interest only passes by the transfer of a chose in action, and the mere form is still to be observed, of bringing the suit in the name of the assignor, that statute expressly declares, that the person for whose use the suit is brought, shall be held and deemed the real plamtiffi, on record.
We think it clear then, that upon this ancient maxim of the common law, no argument can be founded against the validity of the sale of personal goods, upon the ground that the possession thereof, at the time of the sale, was not in the vendor, but in the adverse possession of another.
It follows, that Kimbro, by the execution of the bill of sale, was divested of all interest in the slave, and of course of all right of action, either for the recovery of the slave or the proceeds for which she was sold.
Judgment affirmed.